| | |
|---|---|
| DISTRICT COURT, COUNTY OF DENVER, STATE OF COLORADO<br><br>Court Address:  1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: November 11, 2021 8:07 PM<br>FILING ID: 37B35996DB269<br>CASE NUMBER: 2021CV33612 |
| Plaintiff:  **RENA CHERRICK**<br><br>v.<br><br>Defendants:  **CRST SPECIALIZED TRANSPORTATION, INC. d.b.a. SPECIALIZED TRANSPORTATION, INC., and TERRANCE L. WILLIAMS** | ▲COURT USE ONLY▲ |
| *Attorneys for Plaintiff*:<br>Sean M. Dormer, #44962<br>K.C. Harpring, #47760<br>Erik D. Moya, #55074<br>Dormer Harpring, LLC<br>3457 Ringsby Court, Unit 110<br>Denver, CO  80216<br>Phone Number: (303) 756-3812<br>Facsimile: (303) 477-7400<br>Email: attorneys@denvertrial.com | Case No:<br><br>Division:<br><br>Courtroom: |
| **COMPLAINT AND JURY DEMAND** ||

Plaintiff, Rena Cherrick (hereinafter "Ms. Cherrick"), by and through her attorneys, Dormer Harpring, LLC, for her Complaint against Defendants CRST Specialized Transportation, Inc. d.b.a. Specialized Transportation, Inc., and Terrance L. Williams, states as follows:

**PRELIMINARY STATEMENT**

1. On the morning of November 12, 2018, Defendant Terrance L. Williams ("Defendant Williams") drove his employer's eighteen-wheeler, with an attached semi-trailer, westbound on U.S. Highway 40, in the city limits of Kit Carson, Colorado. In front of him, Ms. Cherrick, was also driving westbound on U.S. Highway 40, in a rented U-Haul van, when she turned on her left blinker and slowed in order to turn into southbound Forest St.

2. In a blatant disregard of safe driving rules, Defendant Williams attempted to pass Ms. Cherrick on her left side, even though she had already made him aware that she was turning.

Defendant Williams entered the middle turning lane of the two-way highway, just as Ms. Cherrick entered that lane to turn left into Forest St.

3. Because of Defendant Williams' actions, as well Defendant CRST Specialized Transportation's ("Defendant CRST") negligent hiring, training, and supervision, Defendant Williams crashed his tractor truck into the front-left of Ms. Cherrick's vehicle, causing several injuries.

## **GENERAL ALLEGATIONS**

4. Ms. Cherrick sustained injuries on November 12, 2018, when Defendants' negligence combined to cause a motor vehicle crash. (This event is more fully described in ¶¶ 16-47 below and is referred to as the "Incident").

5. At the time of the Incident, Ms. Cherrick lived at 2917 Timberline Dr., Eugene, OR 97405.

6. Upon information and belief, at the time of the Incident, Defendant Williams lived at 6425 Westheime Rd., Apt. 632, Houston, TX 77087.

7. Upon information and belief, at the time of the Incident, Defendant CRST was a foreign corporation, organized under the laws of Indiana, with a principal address of 5001 U.S. Hwy. 30 West, Ft. Wayne, IN 46818.

8. Defendant CRST's registered agent in Colorado is Cogency Global Inc., with a street address of 7700 E. Arapahoe Road, Suite 220, Centennial, CO 80112.

9. Upon information and belief, at the time of the Incident, Defendant Williams was driving in the course of his employment with Defendant CRST.

10. Upon information and belief, Defendant CRST, owned the 2015 Freightliner Corp. Trailer Truck, license plate 2214267 State of Indiana, that Defendant Williams was driving at the time of the Incident.

11. Upon information and belief, Defendant CRST allowed Defendant Williams to drive the eighteen-wheeler in the course of his employment.

12. Pursuant to C.R.S. § 13-1-124(1)(b), this Court has personal jurisdiction over each Defendant because they committed one or more tortious acts in the state of Colorado.

13. Pursuant to C.R.C.P. 98(c), venue is proper in the County of Denver, Colorado, because all defendants are nonresidents of Colorado, and this Complaint designates the County of Denver as the venue.

14. The Incident occurred on westbound U.S. Highway 40, near milepost 445, in the city limits of Kit Carson, Colorado.

15. The Incident occurred at around 9:30 a.m. on November 12, 2018.

16. At that time and place, Defendant Williams was driving his semi-trailer truck westbound on U.S. Highway 40.

17. Upon information and belief, Defendant Williams was driving in the course of his employment for Defendant CRST.

18. At the same time and place, some distance in front of Defendant Williams, Ms. Cherrick was driving a rented U-Haul van, westbound on U.S. Highway 40.

19. Ms. Cherrick was driving on U.S. Highway 40 as part of her cross-country drive, from Florida to Oregon.

20. She entered Kit Carson in order to take a rest in a dirt lot located approximately on Forest Road.

21. The posted speed limit for this part of the highway was 35 miles per hour.

22. Before the crash, both Ms. Cherrick and Defendant Williams were driving at about 35 miles per hour.

23. As she approached Forest Street, Ms. Cherrick checked her mirrors to ensure that it was safe to slow down for a turn.

24. After checking that it was safe, Ms. Cherrick turned on her left turn signal.

25. After turning her left turn signal on, Ms. Cherrick began to slow to turn onto Forest Street.

26. Once she began to slow, Ms. Cherrick saw Defendant Williams, in his tractor truck, driving at a high rate of speed behind her.

27. As Ms. Cherrick started turning left, Defendant Williams switched lanes and drove into the center median/turning lane to try to pass Ms. Cherrick on her left-hand side.

28. Because Ms. Cherrick was already turning left when Defendant Williams attempted to pass her by driving on the center median/turning lane on her left-side, he crashed the Defendants' eighteen-wheeler into Ms. Cherrick's U-Haul van on the front-left side.

29. The force of the crash caused Ms. Cherrick's car to come to rest across both eastbound lanes of U.S. Highway 40.

30. Because of his momentum, Defendant Williams went off of the "left side of the road[,] crossing a sidewalk and out into a grass field."

31. Two witnesses to the aftermath of the crash, both unidentified males, helped Ms. Cherrick from her vehicle because she was in pain.

32. Upon information and belief, Defendant Williams proceeded to get out of his vehicle and began to scream at Ms. Cherrick.

33. Upon information and belief, Defendant Williams acted belligerently towards Ms. Cherrick, shouting at her, and at one point calling her a "bitch."

34. Eventually, firefighters, police officers, and EMT arrived at the scene.

35. Upon information and belief, police officers, through the local sheriff, determined that Defendant Williams was going approximately 70 miles per hour when he crashed into Ms. Cherrick's vehicle.

36. Upon information and belief, police officers determined that Defendant Williams was "improperly passing on [the] left" when he caused the Incident.

37. Upon information and belief, police officers determined that Defendant Williams caused the Incident due to his "aggressive driving."

38. Upon information and belief, Defendant Williams was cited for Careless Driving.

39. Upon information and belief, this was not the first time a driver working for Defendant CRST committed a safety violation and then behaved in a way that suggested a lack of care for safety rules.

40. For example, on at least one other occasion in Colorado, a CRST driver caused a collision and then decided to simply leave the scene of that collision.

41. This prior collision resulted in a lawsuit, which was filed and served on Defendant CRST before Defendant Williams injured Ms. Cherrick.

42. The fact that Defendant Williams acted in a similar manner (committing a safety violation, then refusing to take responsibility), even after Defendant CRST was sued for similar behavior by its employees, strongly suggests that Defendant CRST failed to correct its substandard safety supervision and training of its drivers after the prior collision in a way that would have prevented Ms. Cherrick's injuries.

4

43. Alternatively, upon information and belief, Defendant CRST set an incentive structure for its drivers that encouraged them to hurry up at the expense of the safety of other motorists around them.

44. Either way, Defendant CRST could and should have seen the prior lawsuit as a wakeup call and improved its safety culture, but the company instead did neither, and Ms. Cherrick was injured as a result.

45. Ms. Cherrick was taken, by ambulance, to a local hospital in Cheyenne Wells, CO.

46. Upon information and belief, following several exams, it was determined that Ms. Cherrick sustained a fractured right shoulder and right thumb.

47. Upon information and belief, the right thumb fracture required surgery, but Ms. Cherrick could not obtain emergency surgery because there were no hand surgeons located nearby and was therefore forced to wear a thumb splint.

48. Because of her injuries, Ms. Cherrick was forced to stay in a motel in Cheyenne Wells for approximately a month, because she could not drive or transport herself with her injuries.

49. After this month stay, an acquaintance drove Ms. Cherrick to Denver, where she was able to get a flight to Oregon the following day.

50. Her vehicle, which she was towing behind the rented U-Haul van in an auto transport, had to be shipped to Oregon.

51. Because of her extended stay in Colorado, caused by her injuries sustained in this crash, Ms. Cherrick missed out on spending her birthday, Thanksgiving, and the holidays with her family and friends in Oregon.

52. Because of her extended stay in Colorado, caused by her injuries sustained in this crash, Ms. Cherrick lost her job and apartment in Oregon.

53. Upon information and belief, Defendant Williams knew that he should not try to pass another vehicle on the left-side when that vehicle is turning left, but he was not adequately screened, trained, and supervised to make sure that he would know, remember, and act in accordance with this safety rule.

54. Upon information and belief, Defendant Williams was not adequately screened, trained, and supervised to ensure that he knew how to handle the semi-trailer truck he was driving.

55.  Upon information and belief, Defendant Williams was not adequately screened, trained, and supervised to ensure he knew how to respond to the actions of other drivers while driving a commercial semi-trailer truck.

56.  Upon information and belief, Defendant CRST assigned Defendant Williams the route he was driving at the time of the Incident, set the weight he was hauling, and failed to ensure that he knew how to handle the eighteen-wheeler he would be driving.

57.  As a result of Defendant Williams' negligence in attempting to improperly pass Ms. Cherrick, he violated C.R.S. § 42-4-1402.

58.  As a direct and reasonably foreseeable result of the Incident, Ms. Cherrick has suffered injuries, damages, and losses including without limitation, injuries to her right shoulder, arm, wrist, thumb, hand, and neck.

59.  The injuries to Ms. Cherrick's thumb required surgery, and may require surgery in the future.

60.  As a direct and reasonably foreseeable result of Ms. Cherrick's injuries, she has suffered and will continue to suffer economic damages, non-economic damages, and damages for physical impairment and/or disfigurement.

61.  Upon information and belief, as a direct and reasonably foreseeable result of Ms. Cherrick's injuries, she has suffered wage loss and loss of earning capacity.

62.  As a direct and reasonably foreseeable result of her injuries, Ms. Cherrick was rendered more vulnerable to subsequent injury.

63.  Ms. Cherrick's formerly active lifestyle has been compromised as a result of the Defendants' actions.

64.  Ms. Cherrick's date of birth is November 29, 1970.

65.  Ms. Cherrick is now 50 years old.

66.  Pursuant to C.R.S. § 13-25-102, at the time of the Incident, Ms. Cherrick had a remaining life expectancy of at least 36.79 additional years.

67.  That life expectancy is likely higher than the tables suggest.

## FIRST CLAIM FOR RELIEF
### (Negligence against Defendant Williams)

68. Ms. Cherrick incorporates by reference ¶¶ 1-67 as though set forth in their entirety hereunder.

69. Defendant Williams owed a duty to Ms. Cherrick to exercise reasonable care in the operation of the commercial vehicle he was driving at the time of the Incident and the maintenance, inspection, and adjustment of that vehicle

70. Defendants Williams breached one or more of those duties through the acts and omissions described above.

71. Defendant Williams was negligent by committing the acts and omissions described above.

72. As a direct and reasonably foreseeable result of the negligence of Defendant Williams, as described above, Ms. Cherrick has suffered and may continue to suffer injuries, including without limitation economic damages, wage loss, loss of earning capacity, non-economic damages, and physical impairment and disfigurement.

## SECOND CLAIM FOR RELIEF
### (Direct Negligence against Defendant CRST)

73. Ms. Cherrick incorporates by reference ¶¶ 1-67 as though set forth in their entirety hereunder.

74. Defendant CRST owed a duty to Ms. Cherrick to exercise reasonable care in the operation of the commercial vehicle Defendant Williams was driving at the time of the Incident; the maintenance, inspection, and adjustment of that vehicle; the entrustment of that vehicle to Defendant Williams; and the hiring, training, and supervision of Defendant Williams.

75. Defendant CRST breached one or more of those duties through the acts and omissions described above.

76. Defendant CRST was negligent by committing the acts and omissions described above.

77. As a direct and reasonably foreseeable result of the negligence of Defendant CRST, as described above, Ms. Cherrick has suffered and may continue to suffer injuries, including without limitation economic damages, wage loss, loss of earning capacity, non-economic damages, and physical impairment and disfigurement.

## FOURTH CLAIM FOR RELIEF
### (Respondeat Superior against all Defendants)

78. Ms. Cherrick incorporates by reference ¶¶ 1-67 as though set forth in their entirety hereunder.

79. Just before, and at the time of, the Incident, Defendant Williams was working within the course and scope of his employment, driving for Defendant CRST, in furtherance of Defendants CRST's business and acting with the scope of his duties for Defendant CRST.

80. Therefore, under the doctrine of Respondeat Superior, Defendant CRST are vicariously liable for Defendant Williams' conduct, including any negligent act or omissions.

## FIFTH CLAIM FOR RELIEF
### (Negligent Entrustment against Defendant CRST)

81. Ms. Cherrick incorporates by reference ¶¶ 1-67 as though set forth in their entirety hereunder.

82. The semi-trailer truck Defendant Williams was driving at the time of the Incident was under the control of Defendant CRST.

83. Defendant CRST permitted Defendant Williams to use the vehicle at the time of the Incident.

84. Upon information and belief, at the time Defendants allowed Defendant Williams to use the vehicle, Defendant knew or should have known that Defendant Williams was likely to use the vehicle in such a manner as to create an unreasonable risk of harm to others.

85. Defendant CRST negligently entrusted the commercial semi-trailer truck to Defendant Williams.

86. As a direct and reasonably foreseeable result of the negligence of Defendant CRST, as described above, Ms. Cherrick has suffered and may continue to suffer injuries, including without limitation economic damages, wage loss, loss of earning capacity, non-economic damages, and physical impairment and disfigurement.

## SIXTH CLAIM FOR RELIEF
### (Negligent Hiring, Training, and Supervision against Defendants CRST)

87. Ms. Cherrick incorporates by reference ¶¶ 1-67 as though set forth in their entirety hereunder.

88. Upon information and belief, Defendant CRST was careless and negligent in their business practices and operating methods, including, but not limited to, negligent screening, negligent hiring, negligent training, negligent supervision, and negligent retention.

89. Upon information and belief, Defendant CRST negligence includes, but is not limited to, failure to properly investigate Defendant Williams' application, licensing, and compliance with applicable regulations, including licensing, and failure to adequately and properly review Defendant Williams' qualifications and disqualifications.

90. As a direct and reasonably foreseeable result of the negligence of Defendant CRST, as described above, Ms. Cherrick has suffered and may continue to suffer injuries, including without limitation economic damages, non-economic damages, and physical impairment and disfigurement.

## **JURY DEMAND**

91. Ms. Cherrick demands that all claims be tried to a jury and pays the requisite fee, electronically through counsel, with this Complaint and Jury Demand.

WHEREFORE, Plaintiff, Rena Cherrick, requests that judgment be entered in her favor and against Defendants CRST Specialized Transportation, Inc. d.b.a. Specialized Transportation, Inc., and Terrance L. Williams, jointly and severally, for all available relief, including without limitation economic damages, wage loss, loss of earning capacity, non-economic damages and damages for physical impairment and disfigurement, as well as interest, costs, and attorney's fees, and such other relief as this Court deems proper.

DATED November 11, 2021.

DORMER HARPRING, LLC

*This pleading is filed electronically pursuant to C.R.C.P., 121 § 1-26. The original signed pleading is in counsel's file.*

By:   */s/ Erik D. Moya*
        K.C. Harpring, (#47760)
        Sean M. Dormer, (#44962)
        Erik D. Moya, (#55074)
        *Attorneys for Plaintiff*

Plaintiff's Address:
2010 McLean Blvd.
Eugene, OR 97405